ANNA HAJSEK v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.*

FILED APRIL 9, 1903. No. 12,634.

1. **Imputed Negligence.** Except with respect to the relation of partnership, or of principal and agent, or of master and servant, or the like, the doctrine of imputed negligence is not in vogue in this state.

2. **Negligence as a Matter of Law.** Unless the inference of negligence from the conduct of a party is so direct and immediate as to be within the common and universal experience of mankind, the court may not instruct the jury that he was negligent as a matter of law.

ERROR to the district court for Valley county: JOHN R. THOMPSON, DISTRICT JUDGE. *Reversed.*

*A. Norman, Elliott J. Clements* and *Edwin M. Coffin,* for plaintiff in error.

*J. W. Deweese, Alfonso M. Robbins* and *F. E. Bishop, contra.*

* Rehearing allowed. See note at end of opinion.

AMES, C.

The plaintiff, Anna Hajsek, and her husband, Vaclav, were farmers, living a short distance northwest of the village of Ord, in Valley county. On the 22d day of December, 1900, they drove to town with their family team, a span of horses, attached to a common lumber wagon, upon the box of which was a spring seat, upon which they sat. After spending the afternoon in the transaction of business with the village storekeepers, they started toward home at about six and a half o'clock in the evening. The night was cold, dark and stormy, the wind blowing fiercely from the northwest, and carrying considerable clouds of dust. The husband sat on the eastward end of the seat and drove the team. At a short distance north of the village the road which these parties were traveling was crossed at nearly right angles, and at a distance of about three-quarters of a mile northwest of the village depot, by the track of the defendant railroad company. Westward from Ord the company operated two regular trains a day, the last of which, if running according to "schedule time," should have passed this intersection at 5 o'clock P. M. on the day in question, but without the knowledge of the plaintiff or her husband, it was an hour and forty minutes late. Just before reaching the crossing, going northward, there was a considerable depression in the common highway, and, beginning about two hundred feet eastward from the crossing, there was a cut of considerable length and from five to eight feet deep in the railroad grade. In daylight a person standing on the highway sixty feet south of the crossing could have seen an approaching train four hundred and fifty feet away, and at from thirty to forty feet from the crossing a train under like circumstances might have been seen nearly the whole distance to the station. Husband and wife both testify that when they were from thirty to forty steps—that is, from ninety to a hundred and twenty feet—south from the crossing they both looked eastward

for an approaching train, but saw none, and afterwards took no precaution, and neither saw a train nor heard any signal until they were actually on the track, and a train was bearing close down upon them, which collided with the wagon, and threw the plaintiff to the ground, causing injuries to recover for which she brings this action. Upon this state of the evidence the court instructed the jury to return a verdict for the defendant, upon the ground that the plaintiff was, as a matter of law, guilty of such negligence as to preclude her from recovery, even if it should be found that the defendant was also negligent. Was this instruction right?

In seeking an answer to this question it is unnecessary to inquire what would have been the case if the action had been by the husband to recover for injuries to himself. Some argument is advanced in support of the proposition that inasmuch as the plaintiff mentioned the team and wagon as "ours," and because the expedition into the the village was for the purpose of buying family supplies, the transaction should be regarded as a "joint enterprise," in which the negligence of each partner should be imputed to the other, within the rule of *Omaha & R. V. R. Co. v. Talbot,* 48 Neb. 627. We are not impressed by this argument. Doubtless the life journey of the parties since their marriage may, in a sense, be regarded as a joint enterprise, but this fact would not be held to charge the wife with the consequences of the husband's negligence in most transactions. Why should it be so regarded in this instance? In *Huff v. Ames,* 16 Neb. 139, the doctrine of imputed negligence was distinctly repudiated by this court. The fact that the person injured in that instance was an infant we do not conceive to affect the rule now under consideration. We can see no reason why, if the negligence of the husband may be imputed to his wife, that of a father may not also be imputed to his child. The fact that the child, being under years of discretion, is incapable of negligence, while the wife is so capable, can make no difference with the application of

the rule. The sole question is whether, in the absence of the relations of master and servant, principal and agent, etc., the negligence of one person can be imputed to another. The rule, if valid, is of universal application, and unless the person guilty of negligence is the agent, servant or partner of the person injured, his delinquency can not be imputed to the latter. This question is discussed at length, and with the citation of a wealth of authorities, in *Pyle v. Clark*, 75 Fed. 644, where the doctrine is so fully elucidated as to render further comment by us uncalled for. The plaintiff in this case was a woman of discreet years, and unlike an infant, capable of negligence independently of or concurrently with her husband. Can it. be said from the evidence that her conduct was such as to lead to no other inference than that she was culpably negligent, so that it became the duty of the court to withdraw the question from the jury? It seems to us that it can not. She was sitting on the side of the wagon furthest from the approaching train, her head was incumbered with wraps, on account of the cold and boisterous weather, and her attention was devoted largely to observing whether the wagon kept in the beaten path. It is not shown that he had any especial reason to apprehend danger, and the hour of the day when the train usually passed the crossing had long since elapsed. Under all the circumstances, which need not be fully detailed here, she may have been negligent in entrusting the management of the team, and the keeping of a look out for danger exclusively, or nearly so, to her husband; but we can not say that such an inference is so immediate and direct as to exclude any other presumption in harmony with the common and universal experience of mankind, and we are therefore of opinion that the instruction complained of was erroneous.

It is recommended that the judgment of the district court be reversed, and a new trial granted.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED AND REMANDED.

NOTE.—On rehearing the judgment of this court was reversed and the judgment of the lower court was affirmed. Reported in 5 Neb. (Unof.) 67, for reasons stated in reporter's note to that volume, page v.