PHILANDER G. LOSO, APPELLANT, V. LANCASTER COUNTY, APPELLEE.

FILED NOVEMBER 10, 1906.  No. 14,450.

1. Counties: PERSONAL INJURY: IMPUTED NEGLIGENCE.  The doctrine of identification or imputed negligence does not apply to one injured while riding in a private vehicle, where no privity exists between the injured person and the owner or driver of the vehicle, and the injured person himself is not guilty of contributory negligence.

2. ———: ———: ———.  One who is injured by reason of a defective bridge while riding in a private vehicle may recover from a county otherwise liable, notwithstanding the negligence of the driver, which may have contributed to produce the injury, the injured party being free from negligence and having no authority or control over the driver.

3. Case Modified.  The first paragraph of the syllabus of *Omaha & R. V. R. Co. v. Talbot*, 48 Neb. 627, modified.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE.  *Reversed.*

*Field, Ricketts & Ricketts,* for appellant.

*J. L. Caldwell, F. M. Tyrrell* and *Charles E. Matson,* contra.

EPPERSON, C.

Plaintiff Loso and an assistant went by rail to the village of Agnew, in Lancaster county, and from there

walked a mile and a half to the farm of one Rhoman to repair a well. After the work was completed Rhoman's son volunteered to convey them back to the village. A horse was hitched to a single buggy, and the three men started north along the highway in the direction of Agnew. A ravine, over which the defendant, the county of Lancaster, maintained a bridge, crosses the highway at right angles. The bridge was 16 feet long, was not protected by guard rails, and one corner had settled about a foot, causing the structure to slope toward the southeast. When the buggy approached the bridge, plaintiff was sitting on the east side, his assistant on the west, and Rhoman in the middle, driving the horse. A mist was falling and it was getting dark. As they approached to cross the bridge, the horse slipped on the wet boards and fell. In his efforts to arise he fell from the bridge, carrying the buggy and the three men with him to the bottom of the ravine, 16 feet below. Plaintiff was injured, and, under the provisions of the statute, brought this action against the county, alleging that the county was negligent in not providing side-rails and in permitting the bridge to slope toward one corner. The county contended that the driver, Rhoman, was guilty of contributory negligence, and a verdict was returned for defendant. The court instructed the jury "that, if the driver was negligent in driving upon the bridge in the manner he did under the circumstances, his negligence would be imputed to the plaintiff, and in that event the plaintiff could not recover." The giving of this instruction presents the principal question in the case.

As a general rule, "there can be no such thing as imputable negligence, except in cases where that privity which exists in law between master and servant and principal and agent is found." 16 Am. & Eng. Ency. Law (1st ed.), 447. The doctrine of imputed negligence or identification as to vehicles was first stated in the English case of *Thorogood v. Bryan*, 8 C. B. 115. It was there held that a passenger in a public vehicle, though having no control over the driver, must be held to be so identified with the

vehicle, as to be chargeable with any negligence on the part of its managers which contributed to an injury inflicted upon such passenger by the negligence of a stranger. This decision has been followed by a few of the courts of this country, notably Wisconsin. *Prideaux v. City of Mineral Point,* 43 Wis. 513. *Thorogood v. Bryan,* however, has been recently overruled by the courts of England, because the reasons upon which the decision rests are "inconclusive and unsatisfactory," and the "identification upon which the decision * * * is based has no foundation in fact." *Mills v. Armstrong,* 58 L. T. n. s. 423.

The supreme court of the United States has also declined to follow *Thorogood v. Bryan.* In *Little v. Hackett,* 116 U. S. 366, Mr. Justice Field, speaking for the court, said:

"The truth is, the decision in *Thorogood v. Bryan* rests upon indefensible ground. The identification of the passenger with the negligent driver or the owner, without his personal cooperation or encouragement, is a gratuitous assumption. There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver or the person managing it is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world."

Not only are the authorities to the effect that the doctrine of identification or imputed negligence has no application to public conveyances, but the overwhelming weight of authority is that the doctrine cannot be extended to private vehicles.

Sanborn, J., speaking for the court, in *Union P. R. Co. v. Lapsley,* 51 Fed. 174, uses this language: "But, where the owner and driver of a team and carriage invites another to ride in his carriage, no relation of principal and agent is created; no relation of master and servant is established; the owner and driver of the team is not controlled by and is not in any sense the agent of the invited guest; and to hold him responsible for the negligence of

the former, by whose permission alone he rides, is unauthorized by law and repugnant to reason. That he who suffers injury from another's negligence may recover compensation of the wrongdoer is a principle founded in natural justice, and sustained by every precedent. That where the negligence of the person injured has contributed to the injury he cannot so recover, because it is impracticable in the administration of justice to divide and apportion the compensation in proportion to the varying degrees of concurring negligence, is equally well settled. But that he whose wrongful act or omission has caused the injury and damage, and who upon every consideration of justice and reason ought to make compensation for it, shall be permitted to escape because a third person, over whom the injured person had no control, and whose only relation to him was that of a guest to his host, has been guilty of negligence that contributed to the injury, is neither just nor reasonable. According to the verdict of this jury, a loss of $1,000 was entailed upon the decedent by the negligence of this defendant. The defendant's wrongful omission was the proximate cause of this damage. The decedent in no way caused or contributed, by any act or omission of hers, to this injury. She had no control over her brother, the driver, who may have contributed by his carelessness to the damage. Upon what principle, now, can it be justly said that the decedent must bear all this loss when she neither caused, was responsible for, nor could have prevented it, because this third person assisted to cause the injury, the proximate cause of which was the wrongful act of the defendant company? If there exists in the realm of jurisprudence any sound principle upon which so unrighteous a punishment of the innocent and the discharge of the guilty may be based, we have been unable to discover it."

In *Dean v. Pennsylvania R. Co.*, 129 Pa. St. 514, 6. L. R. A. 143, it is said: "Quotations might be given from many cases in the different states, illustrating the very firm and emphatic manner in which the doctrine of this

celebrated case (*Thorogood v. Bryan*) has been denied. The authorities in England, and the great current of authorities of this country, are against it. Nor can I see why, upon any rule of public policy, a party injured by the concurrent and contributory negligence of two persons, one of them his common carrier, should be held, and the other released from liability. As to this, I speak only for myself. In my opinion there is no principle consonant with common sense, common honesty, or public policy, which should hold one not guilty of any negligence, either of omission or commission, for the negligence of another, imputed to him under such circumstances.   *   *   *   Dean was riding in the wagon merely by invitation of Fields, who happened to be going in the direction of Dean's home with a load of provisions. He was carried without compensation, merely as an act of kindness on the part of Fields, who had sole control of the team and of the wagon. The case is similar in this respect to *Carlisle v. Brisbane*, 113 Pa. St. 544, and the case of *Follman v. Mankato*, 35 Minn. 522. We are clearly of opinion that if Dean himself was guilty of no negligence, the negligence of Fields cannot be imputed to him." See also *Bunting v. Hogsett*, 139 Pa. St. 363.

In *Dyer v. Erie R. Co.*, 71 N. Y. 228, the plaintiff was injured while crossing the defendant's railroad track on a public thoroughfare. He was riding in a wagon by the permission and invitation of the owner of the horse and wagon. At that time a train standing south of certain buildings, which prevented its being seen, had started to back over the crossing without giving the driver of the wagon any warning of its approach. The horses, becoming frightened by the blowing off of steam from engines in the vicinity, became unmanageable, and the plaintiff was thrown, or jumped, from the wagon, and was injured by the train, which was backing. It was held that no relation of principal and agent arose between the driver of the wagon and the plaintiff, and although he traveled voluntarily, he was not responsible for the negligence of the

driver, where .he himself was not chargeable with negligence, and there was no claim that the driver was not competent to control and manage the horses.

In *Robinson v. New York C. & H. R. R. Co.*, 66 N. Y. 11, 23 Am. Rep. 1, it is said by Church, C. J.: "It is, therefore, the case of a gratuitous ride by a female upon the invitation of the owner of a horse and carriage. The plaintiff had no control of the vehicle, nor of the driver in its management. It is not claimed but that Conlon was an able-bodied, competent person to manage the establishment, nor that he was intoxicated, or in any way unfit to have charge of it. Upon what principle is it that his negligence is imputable to the plaintiff? It is conceded that if by his negligence he had injured a third person, she would not be liable. She was not responsible for his acts, and had no right and no power to control them. True, she had consented to ride with him, but as he was in every respect competent and suitable, she was not negligent in doing so. Can she be held by consenting to ride with him to guarantee his perfect care and diligence? There was no necessity for riding with him. It was a voluntary act on the part of plaintiff, but it was not an unlawful or negligent act. She was injured by the negligence of a third person, and was free from negligence herself, and I am unable to perceive any reason for imputing Conlon's negligence to her. * * * I am unable to find any legal principle upon which to impute to the plaintiff the negligence of the driver. The whole argument on behalf of the appellants on this point is contained in the following paragraph from the brief of its counsel: 'So if the plaintiff had proceeded on this journey upon the invitation of Conlon for the like purpose, she having voluntarily intrusted her safety to his care and prudence, and thus exposed herself to the risk of injury arising from his negligence or want of skill, she should be precluded from recovering if he thereby contributed to her injury.' If this argument is sound why should it not apply in all cases to public conveyances as well as private? The

acceptance of an invitation to ride creates no more responsibility for the acts of the driver than the riding in a stage-coach, or even in a train of cars, providing there was no negligence on account of the character or condition of the driver, or the safety of the vehicle, or otherwise. It is no excuse for the negligence of the defendant that another person's negligence contributed to the injury, for whose acts the plaintiff was not responsible. The rule of contributory negligence is very strict in this state, and should not be extended, nor should the rule of imputable negligence be extended to new cases where the reason for its adoption is not apparent."

In 7 Am. & Eng. Ency. Law (2d ed.), 447, the rule is stated thus: "Occupants of private conveyances. In the second class of cases there has been, and still is, much conflict among the authorities, but the true principle seems to be that when a person is injured by the negligence of the defendant and the contributory negligence of one with whom the injured person is riding as a guest or companion, such negligence is not imputable to the injured person; while, on the other hand, it may be imputable when the injured person is in a position to exercise authority or control over the driver."

In 1 Thompson, Commentaries, Law of Negligence, sec. 502, it is said: "While there are a few untenable decisions to the contrary, nearly all American courts are agreed that the rule under consideration extends so far as to hold that where a person, while riding on a private vehicle by the invitation of the driver, or the owner, or the custodian of the vehicle, and having no authority or control over the driver, and being under no duty to control his conduct, and having no reason to suspect any want of care, skill, or sobriety on his part, is injured by the concurring negligence of the driver and a third person or corporation, the negligence of the driver is not imputed to him so as to prevent him from recovering damages from the other tort feasor." See also: *Covington T. Co. v. Kelly,* 36 Ohio St. 86; *Masterson v. New York C. & H. R. R. Co.,*

84 N. Y. 247; *Strauss v. Newburgh E. R. Co.*, 39 N. Y. Supp. 998; *Kessler v. Brooklyn H. R. Co.*, 38 N. Y. Supp. 799; *Metropolitan Street R. Co. v. Powell*, 89 Ga. 601; *City of Leavenworth v. Hatch*, 57 Kan. 57; *Cahill, v. Cincinnati, N. O. & T. P. R. Co.*, 92 Ky. 345; *Noyes v. Boscawen*, 64 N. H. 361; *Ouverson v. City of Grafton*, 5 N. Dak. 281; *St. Clair Street R. Co. v. Eadie*, 43 Ohio St. 91; *Carlisle v. Brisbane*, 113 Pa. St. 544; *Philadelphia, W. & B. R. Co. v. Hogeland*, 66 Md. 149; *Baltimore & O. R. Co. v. State*, 79 Md. 335; *Alabama & V. R. Co. v. Davis*, 69 Miss. 444; *Follman v. Mankato*, 35 Minn. 522; *Board of Commissioners v. Mutchler*, 137 Ind. 140; *Becke v. Missouri P. R. Co.*, 102 Mo. 544; *Shuler v. St. Louis Transit Co.*, 189 Mo. 107; *Larkin v. Burlington, C. R. & N. R. Co.*, 85 Ia. 492; *Randolph v. O'Riorden*, 155 Mass. 331; *Tompkins v. Clay Street R. Co.*, 66 Cal. 163; *Duval v. Atlantic C. L. R. Co.*, 134 N. Car. 331, 65 L. R. A. 722; *Louisville & N. R. Co. v. Molloy's Adm'x*, 91 S. W. (Ky.) 685.

The overwhelming weight of authority in this country is that the negligence of the driver of either a public or private vehicle is not imputable to the passenger or guest. Especially should this rule apply to a case like the one in hand, where it was not shown that the relation of master and servant, or principal and agent, or the like, existed, and where it was not shown that the plaintiff had any control, or right of control, of the driver.

In 1 Shearman & Redfield, Law of Negligence, sec. 66, the authors, after giving the history of the doctrine announced in *Thorogood v. Bryan*, say: "The only remnant of this doctrine which remains in sight anywhere is the theory that one who rides in a *private* conveyance thereby makes the driver his agent, and is thus responsible for the driver's negligence, even though he has absolutely no power or right to control the driver. This extraordinary theory, which did not even occur to the hair-splitting judges in *Thorogood v. Bryan*, was invented in Wisconsin, and sustained by a process of elaborate reasoning.   *   *   *   The notion that one is the

'agent' of another, who has not the smallest right to control or even advise him, is difficult to support by any sensible argument. This theory is universally rejected, except in the three states mentioned (Wisconsin, Nebraska, and Montana) and it must soon be abandoned even there."

We have not overlooked the case of *Omaha & R. V. R. Co. v. Talbot*, 48 Neb. 627, referred to in 1 Shearman & Redfield, Law of Negligence, sec. 66, *supra*. In that case this court imputed to the plaintiff the carelessness of the driver of a private conveyance on the ground that the driver must be considered the agent of the plaintiff. It was held in the first paragraph of the syllabus: "(1) That the conveyance being a private one the driver was the agent of the injured person. (2) If the act of the driver in going upon the crossing without looking and listening was negligence which contributed to the injury received, the injured person cannot recover." A consideration of the doctrine of imputed negligence was not necessary to the disposition of the case. *Prideaux v. City of Mineral Point*, 43 Wis. 513, was followed without a discussion of the numerous authorities in conflict therewith. This question was not discussed in the opinion, but the learned commissioner assumed that the doctrine of imputed negligence applied to that case.

A correct conclusion was reached in the Talbot case, and it has been reaffirmed by this court in numerous subsequent cases, among which are: *Brady v. Chicago, St. P. M. & O. R. Co.*, 59 Neb. 233; *Hajsek v. Chicago, B. & Q. R. Co.*, 68 Neb. 539, 5 Neb. (Unof.) 67. However, the question of imputed negligence or identification was not necessarily involved, because in that case plaintiff was guilty of contributory negligence in attempting to cross a railroad track without taking the precaution to stop, look and listen. It was therefore immaterial in that case whether or not the negligence of the driver was imputable to the plaintiff. His own contributory negligence was a bar to a recovery against the railroad company.

See cases last above cited, and also *Colorado & S. R. Co. v. Thomas,* 33 Colo. 517. Mr. Commissioner AMES held in *Hajsek v. Chicago, B. & Q. R. Co.,* 68 Neb. 539: "Except with respect to the relation of partnership, or of principal and agent, or of master and servant, or the like, the doctrine of imputed negligence is not in vogue in this state." Although this decision was vacated on rehearing and the judgment affirmed on the ground that the plaintiff was guilty of contributory negligence (5 Neb. (Unof.) 67), no doubt remains that what was said in that case concerning the doctrine of imputed negligence is the law in this state, and is sustained by the great weight of authority in this country. See, also, *Huff v. Ames,* 16 Neb. 139. We are therefore of opinion that the *Talbot* case should be modified in so far as it makes the driver of any private vehicle the agent of his guest, and applies the doctrine of identification or imputed negligence to all persons injured while riding in a private conveyance, no matter what the circumstances or relationship of the parties may be.

The defendant in the case at bar cites cases which, it is contended, support the theory of imputable negligence. In *Bartram v. Sharon,* 46 L. R. A. 144, 71 Conn. 686, it was held: "No recovery can be had under a statute giving a right of action for a penalty in case of injuries caused by a defective highway, where the injury is caused by such defect combined with the negligence of a third person." To the same effect is *Orr v. City of Oldtown,* 99 Me. 190, 58 Atl. 914. These cases were not based upon the doctrine of imputed negligence, but each was founded upon a statute which the court construed as giving a cause of action only in the event that the injury arose wholly from the defective highway. It is not contended that our statute is of such narrow scope. In *Mullen v. City of Owosso,* 100 Mich. 103, the contention of defendant herein is upheld, but by a divided court. Hooker, J., with whom concurred the chief justice, wrote an able dissenting opinion, concluding in these words:

"The time has arrived when the question must be settled. I think it should be in conformity to the weight of authority, and the better rule." *Evensen v. Lexington & B. Street R. Co.*, 187 Mass. 77, 72 N. E. 355, was disposed of very much as *Omaha & R. V. R. Co. v. Talbot*, 48 Neb. 627, and is subject to the same objection. The court apparently assumed, without discussion, that the doctrine of imputed negligence applied. Defendant cites other cases that may be distinguished from the case before us. These we will not review at length. Many of them were cases brought to recover for injuries received at railroad crossings by collision with locomotives, and where the injured party himself was negligent, or could by the exercise of ordinary care and prudence have checked or remonstrated with the driver as they were approaching a known place of danger.

We are convinced that imputable negligence exists only where there is privity between the injured person and the one whose contributory negligence cooperated with the negligence of the defendant in causing the injury. In the case before us, plaintiff was practically unacquainted with the defective bridge. He had no reason to believe it dangerous. He accepted an invitation from Mr. Rhoman, the owner of the vehicle in which the plaintiff was riding when the injury was inflicted. Rhoman was not under the control of the plaintiff. He was not plaintiff's agent or servant. No privity existed between them. Plaintiff was acquainted with no facts which would prompt a prudent man to interfere with the course taken by the driver. The first danger he knew was the slipping of the horse when it fell upon the bridge. This was followed immediately by the precipitation of the plaintiff to the bottom of the ravine. At no time could plaintiff advise or remonstrate with his driver. We find no sound rule of law by which the negligence of Rhoman, if any, may be imputed to the plaintiff under the circumstances disclosed in this case. In our opinion, the instruction complained of imputing the negligence of the driver, if

any, to the plaintiff was wrong and should not have been given.

In his petition plaintiff alleged that the injury was caused "without any fault or negligence on the part of the plaintiff or the person driving said vehicle.". Defendant now contends that by reason of this allegation plaintiff was required to prove that Rhoman, the driver, was without negligence. In construing a petition most strongly against a party pleading, courts should not resort to a technical construction of the words used. The allegation referred to was unnecessary. It did not add to plaintiff's cause of action. It was pleading a conclusion, and should be construed as though it read: "Said injury was without fault or negligence of the person driving, which could be imputed to the plaintiff."

We recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.